No. 25535

Cherokee Water District, a Quasi-Municipal Corporation of the State of Colorado and C. H. Clark, Jr. v. Colorado Springs, a Municipal Corporation of the State of Colorado

(519 P.2d 339)

Decided February 19, 1974.

Saunders, Snyder & Ross, P.C., John M. Dickson, for plaintiffs-appellants.

Gordon D. Hinds, City Attorney, Horn, Anderson & Johnson, Louis Johnson, for defendant-appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an appeal from a declaratory judgment. The action was brought by the Cherokee Water District in an attempt to have portions of a contract between the District and the City of Colorado Springs declared *ultra vires,* null and void and to have a ruling that the District has power to supersede the contractual provisions and to fix rates for water delivered to the City. The District was unsuccessful in its attempt. We affirm.

The territory of the District is near but not within the limits of the City. Prior to the time the contract was made, the District had acquired water from wells in the Black Squirrel Creek area, located 25 miles east of the City and the District. Under the contract dated May 14, 1963, the District was to supply the City with 3,000 acre-feet of water annually for a period of 10 years at a price of $60 per acre-foot. The contract recognized that the District would use an additional 3,000 acre-foot annually for its own purposes, and limited the District to 3,000 acre-feet out of the first 6,000 acre-feet of annual production. If there was insufficient water to supply the combined 6,000 acre-foot requirement, the District and the City would bear the shortages in equal amounts. If the annual production was greater than the combined amounts, the City had prior rights to purchase up to an additional 3,000 acre-feet annually at $50 per

acre-foot. Delivery of the water would commence as soon as facilities could be constructed, and no later than January 1, 1964.

The contract also provided that after the first 10 years the City had the option *in perpetuity* each year to take the average amount of water delivered annually during the first 10 years of the contract. In return the City would pay the District's maintenance and operating costs prorated according to the proportionate amount of water purchased as compared with the entire amount produced. Also included within the payment by the City would be an additional $7.50 per acre-foot, plus royalties to be paid by the District for water up to $7.50 per acre-foot.

The District embraces 2 1/2 square miles. At the time the contract was made there were few, if any, persons residing within the District boundaries. The District used the contract to finance the purchase and installation of its pipe lines and water system.

In August of 1970 the District notified the City that, commencing October 1, 1970, the City would have to pay $126 per acre-foot for water delivered under the contract. It has been the position of the District that it was entitled to abrogate the contract in this respect under 1969 Perm. Supp., C.R.S. 1963, 89-5-13(12)(a) and (b). This statute grants to water districts the power to fix and from time to time increase or decrease water charged.

I.

Citing *City of Fort Collins v. Park View Pipe Line,* 139 Colo. 119, 336 P.2d 716 (1959), the trial court held that in selling water beyond its boundaries the District acted in its proprietary capacity and was free to contract as provided in the agreement;[1] and that the power of the District to increase water rates under the statute "is limited to those customers receiving service within the boundaries of the District and for which the District has a utility obligation to serve."

---

[1] *See also City of Colorado Springs v. Kitty Hawk Development Co.,* 154 Colo. 535, 392 P.2d 467 (1964), and cases cited therein.

■ We do not need to reach the questions as to the right of the District to contract with its own residents and whether the statute gives it the right to abrogate such a contract with residents. In affirming, we merely hold that the District has authority to enter into the contract here involved, and that, since it involves a sale and delivery of water outside the boundaries of the District, the District does not have authority under the statute to abrogate the price portion of the contract.

## II.

A much more difficult question is presented by the argument that the option within the contract is *ultra vires,* null and void because it is *in perpetuity.* The trial court simply held that it was not *ultra vires* and void, without citing authority. Strangely, on this point the City has merely argued that the contract is valid because the District had authority to enter into it and did so in its proprietary capacity. It would seem that the majority rule is that an *in perpetuity* provision of a contract to which a municipal corporation is a party is ultra vires and unenforceable. *Westminster Water Co. v. City of Westminster,* 98 Md. 551, 56 A. 990 (1904); *City Council of Augusta v. Richmond County,* 178 Ga. 400, 173 S.E. 140 (1934); *State v. Minnesota Transfer Ry. Co.,* 80 Minn. 108, 83 N.W. 32 (1900); and 12 *McQuillin, Municipal Corporations,* 3d (1970), § 34.131.

With respect to contracts for the sale of water, however, we have reached the view that in this state the rule of *City of Des Moines v. City of West Des Moines,* 239 Iowa 1, 30 N.W. 2d 500 (1948), should be followed. There, one city granted the other continuing use of its sewer system under a contract which could be renewed perpetually. The contract was upheld. The court, after a rather exhaustive citation of authorities, reached the conclusion that a contract perpetual in operation is not necessarily against public policy, that it is *prima facie* irrevocable, and that the burden of proof is on the one who contends it is against public policy.

■ Our constitution provides:

"The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided." Colo. Const. art. XVI, § 5.

Our state grants the right to appropriators to the use of water *in perpetuity.* We can see no reason why the same rule should not apply here. Water is not a "sometime thing" — most usages of it are perpetual. Therefore, we hold that a contract for its use can be *in perpetuity.*

We reiterate that our holding that this contract is not *ultra vires* is limited to the subject matter, *viz.,* water.

■ Contractual obligations can be avoided on the ground of impossibility of performance or, perhaps, hardship. *Littleton v. Employers Fire Insurance Co.,* 169 Colo. 104, 453 P.2d 810 (1969). While the District urges that this contract might become impossible or unreasonably difficult to perform, no showing has been made that that is the case now. That bridge can be crossed if and when it is reached.

III.

■ We find no merit in the contention that the contract is constitutionally invalid.

Judgment affirmed.