**MARIANO & ASSOCIATES, P.C., a Wyoming professional corporation, Appellant (Plaintiff),**

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SUBLETTE, State of Wyoming, Appellee (Defendant).**

No. 86–206.

Supreme Court of Wyoming.

May 14, 1987.

William H. Twichell and Gerald R. Mason of Mason & Twichell, P.C., Pinedale, for appellant.

John V. Crow, Sublette Co. Pros. Atty., Pinedale, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Adverse summary judgment was granted in a damage-recovery suit by an accounting firm following the Sublette County Board of Commissioners' revocation of the second year of a two-year auditing contract. The significant issue raised was the validity of a governmental contract extending beyond the term of the office of the contracting officials.

## I. FACTS

On August 3, 1984, as a negotiated response to an accounting proposal request, appellant, then known as Mariano & Mortensen, P.C., now Mariano & Associates, P.C., submitted a written acceptance letter to perform auditing services for Sublette County for the two fiscal years ending June 30, 1984 and June 30, 1985. By endorsement on the letter, the Chairman of the Board of County Commissioners executed an acceptance on August 24, 1984, confirming a Board resolution entered in the Commission minutes. This Board action had confirmed earlier Board action taken on June 19, 1984:

"The County Commissioners considered the following proposals for county audit: Mariano & Mortensen, P.C., Pinedale, not to exceed $14,000, and Sorensen & Sorensen, P.C., Jackson, not to exceed $12,000. The local firm was given the opportunity to match the low bid, which they accepted, and the commissioners approved their

proposal to conduct the 1983–84 fiscal year audit of county funds."

In March of 1985, Mortensen left the accounting firm and uncharitably approached the county officials to secure the second fiscal 1985 accounting contract for himself, as a continuation of the work that he had generally provided in the first year as a member of the contracting accounting firm. The bids were again "negotiated," or "peddled," and he was awarded the remaining one-year contract at a not-to-exceed $10,500 price. The higher-amount existing contract with appellant was terminated; Mortensen was given the new contract; and Mariano sued the county commissioners for a claimed profit for the second year of $12,925. Both plaintiff-accounting firm and the county-defendant filed motions for summary judgment. The trial court granted summary judgment to the county, leaving Mariano where he was—out in the cold.

The litigants present four issues for appellate review. In addition to the principal issue presented of the validity of a contract with a governmental entity which extends beyond the contracting official's term of office, appellant questions whether a contract was actually created, the validity of a governmental contract which extends beyond the fiscal year, and whether a denial of a motion for summary judgment is appealable.

Since our decision on the principal issue is dispositive, we will not pursue discussion on the other issues submitted.

## II. WYOMING PRECEDENT

In *Hyde v. Board of Commissioners of Converse County*, 47 Wyo. 101, 31 P.2d 75 (1934), a one-year contract for a county extension agent involved the period from July 1, 1932 to June 30, 1933. In January, 1933, after the fall election, the county commissioners viewed the county agent service differently, and denied continuing funding to complete the agreed term. This court labored mightily to justify the early termination of that one-year employment agreement. Avoiding any discussion of the governmental-proprietary differential, which was generally the test or pretext of

most earlier cases, our court adopted as the controlling principle, the rule as stated in 7 R.C.L. 946, § 21:

"'In this as in many other instances of seeming conflict, a statement of a positive and inflexible rule either way is not even desirable, for much depends upon questions of duty, expediency, the immediate or reasonable necessities, and other particular circumstances of the case. Under some circumstances the right to legislate prospectively should be upheld, whereas under a different state of circumstances it should be unhesitatingly denied. It is within the range of surmise at least to conceive of a rule in either case that would best be honored in the breach.'" 31 P.2d at 78.

The court then generally approved the facts and circumstance, necessity and benefit test, from a Pennsylvania case, *Moore v. Luzerne County*, 262 Pa. 216, 105 A. 94 (1918):

"'* * * [T]he facts and circumstances of each case must be considered in determining it. Ordinarily it is limited in time to the term of the agent who makes it. Necessity, or its equivalent of great advantage to the principal, may furnish a reason for enlargement beyond the term; but he who asserts the existence of the necessity or great benefit has the burden of proving it. This is particularly true of public officials; else those going out of office might so tie the hands of those coming in as to cause serious embarrassment and loss to the public.' [*Moore v. Luzerne County*, 262 Pa. 216, 105 A. 94, 95.]" 31 P.2d at 79.

With two new county commissioners then elected (probably of a different political party), Hyde's continued employment for the five additional months was found by this court to fall short in proof of the justified facts and circumstances, necessity or benefit test for validation. In discussing the underlying county extension service state legislation, Justice Riner opined:

"* * * In putting the stamp of its approval upon that act, the lawmaking body can hardly have believed that any single county board would be clothed

with vision sufficient to unerringly determine in advance what the scroll of the future should be when fully unrolled. Changing conditions frequently require that what is expedient for one year be deemed as quite inexpedient for the following year, in handling county affairs. The difficult and rapidly altering status of business conditions of the people during the past two or three years is an emphatic illustration of our meaning here." 31 P.2d at 79.

The interesting facet is the holding of the case that the county commissioners in 1932 were without legal authority to execute the contract, even though done under a state statute and with a cooperative agreement for the service with the University of Wyoming. Additionally, performance had occurred for seven-twelfths of the fiscal period involved. Not surprisingly, the case was never cited by other state courts as authoritative precedent.

Hyde was followed by *MacDougall v. Board of Land Commissioners of Wyoming*, 48 Wyo. 493, 49 P.2d 663 (1935). The Board of Land Commissioners entered into a contract with an auditing firm to determine how much the state was being cheated on mineral lease royalty payments. The time being 1933, the contract was contingent upon recovery. A wayfaring taxpayer filed a suit to void the written audit and collection contract. A demurrer to the complaint was sustained by the district judge, and the Supreme Court reversed in rejecting the validity of the agreement.[1]

The strongest objection of the 1935 court to the audit contract was the contingent-fee arrangement which might encourage an officer to neglect his duty, with the further thesis that the executive branch of government was usurping the function of the legislature. However, in addition, Hyde was quoted by the court with approval:

"The general rule is that contracts extending beyond the term of the existing board, thus tying the hands of the succeeding board and depriving the latter of its proper powers, are ordinarily, though not always, void as contrary to public policy. *Hyde v. Board* [supra]. The contract in question would seem to fall within the condemnation of that rule." 49 P.2d at 666.

For a specifically contrary result, see *Denio v. City of Huntington Beach*, 22 Cal.2d 580, 140 P.2d 392, 149 A.L.R. 320 (1943), overruled on other grounds sub nom. *Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972); *Board of Commissioners of Edwards County v. Simmons*, 159 Kan. 41, 151 P.2d 960 (1944); *De Bow v. Lakewood TP.*, 131 N.J.L. 291, 36 A.2d 605 (1944).

All of this was not sufficient to settle the nationally pervasive parking-meter litigation of later date,[2] as it came to the Wyoming Supreme Court in *Town of Lovell v. Menhall*, Wyo., 386 P.2d 109 (1963), with trial court determined validity to be affirmed on a two-to-two vote. The written results encompassed three opinions and a divided vote, with the "majority" or confirming action including a declamation of disposition that:

" * * * [D]isposition by an equally divided court of a pending case [is not regarded] as establishing precedent or settling any principles of law." 386 P.2d at 110.

The parking-meter contract was affirmed, and in writing for the affirmative, Justice Gray, with Chief Justice Parker concurring, analyzed the validity beyond term:

"Defendant further contends that the contract is void for the reason that the term thereof extends beyond the terms of the members of the town council executing the agreement and thus is an attempt to bind their successors in the exercise of a police power. The exercise

1. Politics and oil company influence might be perceived in the audit rejection. It was not until approximately 50 years later that the recently retired state auditor, James B. Griffith, assiduously embarked on the same effort. As a matter of academic interest, we might judicially notice the singular underpayments currently found.

2. See Annot., 83 A.L.R.2d 649 and many cases therein cited. A majority of the cases approved the extended term parking meter purchase contracts.

of a police power is, of course, the exercise of a governmental power and generally a municipal body, absent specific legislative authority, may not enter into a contract binding upon the municipality for a time extending beyond the terms of members of the board exercising the power. In this connection we might say that the rule is different if the contract deals with proprietary functions. In those instances, absent restraint by the legislature, a municipal body is free to negotiate contracts binding upon the municipality if such contracts are reasonable in length of time and otherwise unobjectionable under the law." 386 P.2d at 114–115.

Justice McIntyre, with Justice Harnsberger concurring, contended that the interpretative conclusion should find only a one-year cancelable contract so the basic validity question need not be resolved. Justice McIntyre, with Justice Harnsberger concurring, then addressed the governmental-proprietary issue on the validity, stating that equity did not favor the meter company and the contract was consequently void. His discussion called into question the governmental-proprietary differential as a proper test, and applied necessity as the dispositive rule which was consequently found lacking.

The fourth Wyoming case where the subject received any consideration is *Police Protective Association of Casper v. City of Casper*, Wyo., 575 P.2d 1146 (1978). This declaratory-judgment action tested the validity of a collective-bargaining agreement for the city police. The majority held the agreement to be void as construed to continue into perpetuity. Justice Thomas, joined by Justice Raper, separately concurred, construing the agreement to contemplate a reasonable term but otherwise in its nature unauthorized under state law. In a footnote to his special concurrence, Justice Thomas stated:

"I can find no inherent barrier in the cases which would prevent the City of Casper from entering into this agreement for a reasonable time beyond the terms of office of the governing officials. I think this particularly is true in view of the contractual language which contemplates an annual review of the terms of the agreement." 575 P.2d at 1155.

Wyoming precedent consequently provides two political-economic result-oriented decisions, a two-to-two nonprecedential result, and a footnote in the most recent case. We will view this case generally with a fresh perspective in contemplation of today's world.[3]

## III. GENERAL LAW

The hundreds of cases found nationwide which in some fashion consider the subject, afford justification for almost any result desired. In trying to derive a resolution for Wyoming, the first general decision invokes the inquiry whether this exception-dominated subject retains sufficient specificity or vitality to deserve retention as a court-created principle. We are called to consider whether a basic justification or social requirement provides cause for retention from antiquity as might otherwise only benefit linguistic nitpickers and legal archaeologists. Curiously implicit in the subject matter is the significance of enforceability of contracts as the essence of conduct of business affairs, whether public or private. It is strange that no writer on the subject has seen fit to raise the question as to the highway department contract. See, for example, *State Highway Commission of Wyoming v. Brasel & Sims Construction Company, Inc.*, Wyo., 688 P.2d 871 (1984) and an earlier case, *Brasel & Sims Construction Company, Inc. v. State Highway Commission of Wyoming*, Wyo., 655 P.2d 265 (1982). Nor has mention been found in the cases presently reviewed (certainly not being all that exist) providing discussion of the federal constitutional issue, Art. I, § 10:

"No State shall * * * pass any Law impairing the Obligation of Contracts * *."

---

3. In *Tobin v. Town Council of Town of City of Sundance*, 45 Wyo. 219, 17 P.2d 666, 84 A.L.R. 902 (1933), the municipal contract was voided for failure of the council to publicly bid, and term issue was not considered.

See *Trustees of Dartmouth College v. Woodward*, 4 Wheat. 518, 17 U.S. 518, 4 L.Ed. 629 (1819). See also *State v. Davis Oil Company*, Wyo., 728 P.2d 1107, 1111 (1986), Urbigkit, J., concurring in part and dissenting in part.

Rightly invoked for our consideration also, are Art. 1, § 30, Wyoming Constitution:

"Perpetuities and monopolies are contrary to the genius of a free state, and shall not be allowed * * *,"

Art. 1, § 35, Wyoming Constitution:

"No ex post facto law, nor any law impairing the obligation of contracts, shall ever be made,"

and Art. 13, § 3, Wyoming Constitution:

"The legislature shall restrict the powers of such [municipal] corporations to levy taxes and assessments, to borrow money and contract debts so as to prevent the abuse of such power, and no tax or assessment shall be levied or collected or debts contracted by municipal corporations except in pursuance of law for public purposes specified by law."

Generically, public protection of the solvency and the inviolability of the public interest is not solely derived from the "beyond the term" principle, when compared with the provisions of Art. 16, Wyoming Constitution, which at least in some degree provide public protection from inartful governmental contracting by a limitation on debt.

## IV. PRIMACY OF LEGISLATIVE DETERMINATION

■ Subject to these constitutional constraints, it is unquestioned that the state legislature has the basic governmental power to define the scope and terms of permissive contracting by local governmental entities. See for example the Public Works and Contracts Code, § 16–6–101 through § 16–6–118, W.S.1977. What we determine by this case serves only as a present decisional statement subject to the plenary responsibility of the legislature to establish, challenge, or exclude stated contracting requirements or limitations of administrative units of Wyoming government. *Kirchner v. Kansas Turnpike Authority*, 336 F.2d 222 (10th Cir.1964); *Pacific Gas & Electric Co. v. Sacramento Municipal Utility District*, 92 F.2d 365 (9th Cir.1937), cert. denied 303 U.S. 640, 58 S.Ct. 610, 82 L.Ed. 1100 (1938); *McArthur v. Smallwood*, 225 Ark. 328, 281 S.W.2d 428 (1955); *Town of Indian River Shores v. Coll*, Fla.App., 378 So.2d 53 (1979); *Tweed v. City of Cape Canaveral*, Fla. App., 373 So.2d 408 (1979), cert. denied 385 So.2d 755 (1980); *Sampson v. City of Cedar Falls*, Iowa, 231 N.W.2d 609 (1975); *City of Des Moines v. City of West Des Moines*, 239 Iowa 1, 30 N.W.2d 500 (1948); *LaFourche Parish Water District No. 1 v. Carl Heck Engineers, Inc.*, La.App., 346 So.2d 769, writ denied 349 So.2d 873 (1977); *Butler v. Hatfield*, 277 Minn. 314, 152 N.W.2d 484 (1967); *Terminal Enterprises, Inc., v. Jersey City*, 54 N.J. 568, 258 A.2d 361 (1969); *Edsall v. Wheler*, 29 A.D.2d 622, 285 N.Y.S.2d 306 (1967); *Jacobberger v. School Dist. No. 1, Multnomah County*, 122 Ore. 124, 256 P. 652 (1927); *Bair v. Layton City Corp.*, 6 Utah 2d 138, 307 P.2d 895 (1957).

## V. PROPRIETARY–GOVERNMENTAL DIFFERENTIATION

We find no reasoned justification for the governmental-proprietary differential as the dispositive test. Legal advisors or auditors for the board of public utilities encompass no logically differentiated function from attorney or accountant working within the mainstream city or county governmental operation. A municipal county law enforcement facility contract has no practical construction characteristic as differentiated from a city water project or a school facility. See for example, *Daly v. Stokell*, Fla., 63 So.2d 644, 645 (1953):

"We understand the test of a proprietary power to be determined by whether or not the agents of the city act and contract for the benefit and welfare of its people; any contract, in other words, that redounds to the public or individual advantage and welfare of the city or its people is proprietary, while a governmental function, as the term implies, has to

do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty. [Citations.] There is no precise dividing line between the two functions; they may sometime be difficult of distinction and may tend to overlap."

See *Town of Indian River Shores v. Coll*, supra. An interesting contrary result is found in *Schenley Farms Co. v. Allegheny County*, 349 Pa. 637, 37 A.2d 554 (1944), wherein the court first determined that the contract was not binding and then reasoned and reversed with its logic that with the contract as not binding it must be governmental in purpose. That was certainly reasoning from conclusion to premise. Generally, many cases discussed the issue but without an equivalency of the logic and direction as is found in the governmental-proprietary distinctions invoked in the many cases involving the different issues of governmental immunity. *Telford v. Clackamas County Housing Authority*, 710 F.2d 567 (9th Cir.1983), cert. denied 464 U.S. 1070, 104 S.Ct. 977, 79 L.Ed.2d 214 (1984); *Copper Country Mobile Home Park v. City of Globe*, 131 Ariz. 329, 641 P.2d 243 (1981); *Denio v. City of Huntington Beach*, supra, 140 P.2d 392; *Johnson v. State*, 107 Ga.App. 16, 128 S.E.2d 651 (1962); *Sherman v. City of Picher*, 201 Okl. 229, 204 P.2d 535 (1949); *Board of Ed. of Vocational School of Union County v. Finne, Lyman & Finne*, 88 N.J.Super. 91,

210 A.2d 794 (1965); *Valvano v. Board of Chosen Freeholders of Union County*, 75 N.J.Super. 448, 183 A.2d 450 (1962). See however, *Brush v. Commissioner of Internal Revenue*, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428 (1937), dissimilar from the present inquiry as otherwise invoking taxability of wages dependent upon whether the employee was engaged in proprietary or governmental responsibility; even so, its efficacy was short lived, *Helvering v. Gerhardt*, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, reh. denied 305 U.S. 669, 59 S.Ct. 57, 83 L.Ed. 434 (1938); *Scull v. District of Columbia*, 102 A.D.C. 104, 250 F.2d 767 (D.C.Cir.1957), cert. denied 356 U.S. 920, 78 S.Ct. 703, 2 L.Ed.2d 715 (1958). Cf., Annot., 149 A.L.R. 336; Annot., 70 A.L.R. 794; and 10 McQuillin, Municipal Corporations § 29.101 at 467 (3d ed. revised).

## VI. APPLICATION TO WYOMING

Having said that governmental-proprietary differential cannot serve reasonably as a result-oriented decision basis in this decade, and that the legislature has plenary responsibility, this court faces the inquiry of what portion, if any, of the void or voidable beyond-the-term idea, statement, rule, standard, or principle as earlier created should now be retained in application of this case on future criteria of governmental contracting.[4]

---

**4.** It is interesting that personal service agreements have received a mixed review: *Pima County v. Grossetta*, 54 Ariz. 530, 97 P.2d 538 (1939); *Denio v. City of Huntington Beach*, supra, legal services to get oil rights, termination denied; *Douglas v. City of Dunedin*, Fla.App., 202 So.2d 787 (1967), attorney's fees for collection, contingent; *Board of Education of Pendleton County v. Gulick*, Ky., 398 S.W.2d 483 (1966); *LaFourche Parish Water District No. 1 v. Carl Heck Engineers, Inc.*, supra, engineer; *Howard v. State Board of Retirement*, 325 Mass. 211, 89 N.E.2d 758 (1950); *Butler v. Hatfield*, supra, architectural contract; *Board of Education of Vocational School of Union County v. Finne, Lyman & Finne*, supra, architect for school, valid; *Valvano v. Board of Chosen Freeholders of Union County*, supra, insurance adviser, void at end of term; *Edsall v. Wheler*, supra; *Jones v. City of Middletown*, 59 O.L.A. 329, 96 N.E.2d 799 (1948); *Wagenheim v. Alexander Grant & Co.*, 19 Ohio App.3d 7, 482 N.E.2d 955

(1983); *Miles v. City of Baker*, 152 Ore. 87, 51 P.2d 1047 (1935); *Krosnar v. Schmidt Krosnar McNaughton Garrett Co.*, 282 Pa.Super. 526, 423 A.2d 370 (1980); *Newman v. McCullough*, 212 S.C. 17, 46 S.E.2d 252 (1948). Compare the complexity of the employment of a village solicitor in *Village of Moscow v. Moscow Village Council*, 29 Ohio Misc.2d 15, 504 N.E.2d 1227 (1984).

The mixed result in the foregoing cases does not equally apply to school employees where generally all contracts have been validated without regard for initiating term of office. *Board of Education of Pendleton County v. Gulick*, supra; *Board of Education of Brookhaven- Comsewogue Union Free School Dist. v. Port Jefferson Station Teachers Association*, 88 Misc.2d 27, 387 N.Y.S.2d 515 (1976); *Appeal of Black*, 47 Wash.2d 42, 287 P.2d 96 (1955). See cases cited in Annot., 148 A.L.R. 336, 343, and Annot., 70 A.L.R. 802.

Unquestioned as well founded in reason, there was in many cases an expressed judicial concern that a board, officer or governing body should not contract away either the discretion of future decision makers or more importantly the fiscal welfare of the citizens that they were elected or appointed to serve.

We find that principle to contain a sufficient permanence in practical government to justify this court to retain a standard directed toward accommodation of precedent with acknowledgment of present fiscal fact.

■ The principle will be stated that, subject to only applicable state statutes as specifically applied, any contract with a unit of government of the state of Wyoming which extends beyond the term of office of the governmental decisionmakers, e.g., generally the first Monday of January of odd-numbered years, can be subject to challenge if, in consideration of the facts and circumstances, the necessity and benefit to the governmental unit did not justify the extended term when the agreement was made. In reasoning, we generally follow the principal case, *Plant Food Co. v. City of Charlotte*, 214 N.C. 518, 199 S.E. 712 (1938), involving a contract to remove sludge where the court stated:

"It is not to be supposed that because the general subject may belong to the field of governmental powers no detail of administration may be carried out by contract, or that such contract must be completed within the term of the contracting council. The true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired. It is obvious that a too rigid adherence to the principle would leave the town council nursing a mere theory,—in the possession of an important governmental power without practical means for its exercise, and unable to take any important public work, since no concern would equip itself and undertake the project when the incoming administration, the product perhaps of political accident, might repudiate the contract at will during its performance." Id. at 714.

See *Pima County v. Grossetta*, 54 Ariz. 530, 97 P.2d 538 (1939); *Denio v. City of Huntington Beach,* supra; *Carruth v. City of Madera*, 233 Cal.App.2d 688, 43 Cal.Rptr. 855 (1965); and *Harbor Land Co. v. Grosse Ile TP.*, 22 Mich.App. 192, 177 N.W.2d 176 (1970).

" * * * On January 1, 1939, the county attorney, Joseph Judge, who had advised the board of supervisors when the contracts were made, retired from office. 'Now there arose up a new king over Egypt, which knew not Joseph,' (Exodus 1:8), to wit, J. Mercer Johnson, the newly elected county attorney, and from this time on the friendly contest was anything but. * * *

\*　　\*　　\*　　\*　　\*　　\*

" * * * Where the contract in question is a unitary one for the doing of a particular and specified act, but its performance may extend beyond the term of the officers making it, if it appears that the contract was made in good faith and in the public interest it is not void because it will not be completed during the term of those officers. If, on the other hand, the contract is for the performance of personal or professional services for the employing officers, their successors must be allowed to choose for themselves those persons on whose honesty, skill and ability they must rely. The contracts in question were not for the employment of the various attorneys as general advisers to the board of supervisors, but were unitary contracts to handle certain specified matters for a fixed compensation and not on a time basis. We think, therefore, they fall within the class of contracts which may extend beyond the term of the contracting officers." *Pima County v. Grossetta*, supra, 97 P.2d at 540–541.

See also *Telford v. Clackamas County Housing Authority*, supra; *Cherokee Water Dist. v. Colorado Springs*, 184 Colo. 161, 519 P.2d 339 (1974); *Daly v. Stockell*, supra; *Zerr v. Tilton*, 224 Kan. 394, 581 P.2d 364 (1978); *Hargett v. Kentucky*

*State Fair Board,* 309 Ky. 132, 216 S.W.2d 912 (1949); *Bochino v. Palmer,* 203 N.Y. S.2d 301 (1960); *Jacobberger v. School Dist. No. 1, Multnomah County,* supra; *Bair v. Layton City Corp.,* supra.

## VII.   VOID OR VOIDABLE

After initial decision, we then must face the further determination as to which way on the void/voidable spectrum the cases should be emplaced. The immediate practical fact, which again through the many cases has seldom, if ever, been rationally analyzed, is that if a contract is void it is void at the option of either party, but if voidable may be voidable by only one. In logic and practical litigation, if it were determined that all contracts with public instrumentalities which have a period of continuation as frequently occur are subject to being challenged as void by either the government or the contractor, then minimal protection is provided the agencies by virtue of bidding and contracting requirements specifically required by legislative mandate in statutory provision.

Loose language is used in the cases, but intrinsically it would seem that logic and some precedent would support a definition that the contract is contendably voidable only as to the governmental unit, and possibly void when attacked by a third party, such as a concerned taxpayer or a succeeding board member. By the nature of the term voidability, we relate to the bargaining parties, whereas as to an outside party voidness would be the contention. This leaves only the contracting party, totally secured to his agreement without the opportunity to contest by invoking an application of the "beyond the term" principle. *DeKalb County v. Georgia Paperstock Co.,* 226 Ga. 369, 174 S.E.2d 884 (1970).

## VIII.   BURDEN OF PROOF

■ A further inquiry develops as to the burden of proof. In Hyde, this court stated that the proof of necessity or advantage to the government rested with the other contracting party as an affirmative burden. In *McDougall v. Board of Land Commissioners of Wyoming,* supra, 49 P.2d 663,

the issue was not directly addressed as whether the taxpayer, the contracting party, or the land board was impressed with that burden. No other discussion is found in our precedents, and the result from the cases reviewed is obviously mixed and ill defined.

Logic and the necessity to make a decision lead us to consider that in answer to the governmental attempt to invalidate for a post-term reason, the proof obligation arises somewhat of the nature of an affirmative defense that the contract was, under the facts and circumstances, necessary and appropriate. Consequently, in this posture, we will follow the comment of Hyde and other cases reciting a similar status with the decision to be made by the court in the construction and analysis of the contested agreement as a matter of law. *Williams v. Collins Communications, Inc.,* Wyo., 720 P.2d 880 (1986); *Cordova v. Gosar,* Wyo., 719 P.2d 625 (1986); *Denio v. City of Huntington Beach,* supra. This designation-of-proof duty applies to a contest between the government and contracting party, but not to a third-party attack by a taxpayer, disillusioned suitor, or other third-party litigant. It could be concluded that the outside party as in other cases of attack on the governmental contract has the burden of proof, including reasons for invalidating as would demonstrate under the circumstances that the contract was neither necessary nor appropriate. Those attacking the governmental operation should bear the litigative burden. See Rule 11, W.R.C.P.

## IX.   APPLICATION TO THIS CASE

■ In analysis of the accounting-service contracts here presented, nothing is shown why a two-year term was justified, necessary or of benefit, beyond vendor economic opportunity. We could postulate a call for bids whereby a price for two years would be lower, acceptance by qualified accountants would only occur if two years were included, or the experience and acquaintanceship factors of auditing were recognized in the continuity factor involved. Professional services contracts within this sphere of cases is a well-litigated subject.

*Edsall v. Wheler,* supra, 285 N.Y.S.2d 306. If some case continuity might be discerned, it comes from consideration by the courts whether the obligated service could be completed annually or would require an extended time to adequately provide the specific task undertaken. *Pima County v. Grossetta,* supra, 97 P.2d 938.

In this case, we find insufficient legal basis upon review of the evidence for us to reverse the district court in its holding that the plaintiff as the accounting firm failed to meet its burden of proof to show benefit or necessity. Our opinion might be to the contrary if the evidence had shown that the governmental unit had included the two-year term in bidding request for some ascertainable reason or justification. Trust and reliance, intrinsic to certain personal-service contracts such as accountants, lawyers, and doctors, may well afford factors in overall application of the benefit and necessity rule favoring the right to terminate, which would not be available in the multitude of other business relationships regularly conducted through agreements undertaken with governmental units of the state. *Pima County v. Grossetta,* supra.

A further argument advanced by appellant is that this contractual-voidness question should not apply in this case since only one commissioner stood for reelection, and he was successful, so that on the first Monday in January, 1985, the actual membership of the board of county commissioners had not changed. We acknowledge the

thoughtful argument, but find precedent insufficient. *McGinnis v. Cossar,* 230 Ky. 213, 18 S.W.2d 988 (1929). See *MacDougall v. Board of Land Commissioners of Wyoming,* supra. The few cases considering this concept can be analyzed as fact-and-circumstance decisions, and certainly as a matter of evidence pursuant to the assumed burden of proof of the contracting party this circumstance can be considered by the trier of fact within the province of necessity and convenience, or, conversely, a majority change of board might impact the necessity-and-convenience proof. Actually, what we do is to eliminate the fiction of term of office and simply determine that the principle is available for contention if the contract performance continues beyond the normal term of some membership of the deciding body, normally the first Monday in January in odd-numbered years. This can occur when the contract has been in existence for two years and continues, or if executed in December for the winter supply of power for public facilities.[5]

## X. CONCLUSION

In summary: The legislature has primary jurisdiction to determine validity requirements for governmental contracts. Subject thereto, an agreement extending beyond the term of the contracting authority (normally the first Monday of odd-numbered years) may be voidable by the government or void upon attack by a third party if, under the facts and circumstances,

---

5. It is axiomatic that convenience and necessity is almost presumed from the willingness of the governmental unit to enter into the contract. Use of the principle discussed in this case should seldom succeed. However, circumstances can exist where either the successive board is hindered in fact, the government and the rights of citizens are jeopardized, or the normal proclivity of managers to manage can be demonstrated to have been inopportune, and consequently the convenience and necessity for justification and validity is lacking. One could guess that perhaps a million contracts have been entered into by all levels of government in Wyoming since 1933, and the fact that only two have been successfully challenged and appealed before the case at bar amply demonstrates that the accepted purview of the voidability principle is narrow and confined. *Morr v. United States,* 243 F.2d 913 (6th Cir., 1957).

Application of the many cases reviewed invokes a description of hop-scotch law lacking consistency or logical justification except perforce to protect the public from seriously inopportune arrangements or deny predecessor rights to hire advisors for the next regime. As a safety valve as corollary to the legislative jurisdiction, the principle deserves confined retention.

Any separately stated and explicitly defined principle, rule or standard applied to individualized factual situations found in review of precedent has as many holes as a rural intersection highway sign. *We are reminded that Rome wasn't built in a day, and that it frequently takes two years or more to build a jail.* The artificialities of the calendar may have restricted relevance to economic fact and local government in modern operation and business pursuit.

the agreement is not reasonably necessary or of a definable advantage to the city or governmental body. The issue when raised is decided as a matter of law, and the burden of evidence of the actual facts defining convenience and necessity devolve either upon the non-governmental contracting party when attacked by the government or upon the third party who separately might attack the validity of the contract.

We resolve this case by a determination in the context of appellant's burden of proof that error of the trial court is not shown in the record. With that conclusion, no justification remains to address other attacks on the contract by the appellee county, including issues of adequacy of proof of damages if the contract was enforceable, or the countervailing claim of appellant accountant that he was entitled to summary judgment. See *Western Utility Contractors v. City of Casper,* Wyo., 731 P.2d 24 (1986); *Bryant v. Hornbuckle,* Wyo., 728 P.2d 1132 (1986).

Affirmed.