**Alfred J. FIGULY, Plaintiff–Appellant,**

v.

**The CITY OF DOUGLAS, a municipal corporation, H.R. Johnston, individually, Ray Haskins, individually, Defendants–Appellees.**

**No. 94–8070.**

United States Court of Appeals,
Tenth Circuit.

Feb. 20, 1996.

James R. Bell, (Roger E. Shumate, and James W. Owens, Jr., with him on the brief), Murane & Bostwick, Casper, Wyoming, for Plaintiff–Appellant.

Michael K. Davis, Yonkee & Toner, Sheridan, Wyoming, for Defendants–Appellees.

Before EBEL, Circuit Judge, HOLLOWAY, Senior Circuit Judge, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

Plaintiff–Appellant Alfred J. Figuly was the city administrator for the city of Douglas, Wyoming, from March, 1989 until June 14, 1993, when he was terminated. He brought this suit under the provisions of 42 U.S.C. § 1983, claiming a violation of his federal civil rights, as well as claims under state law, relating to breach of contract, breach of implied covenants of good faith and fair dealing, the tort of outrage, negligence, and defamation. The defendants are the city of Douglas and H.R. Johnston, council member; and Ray Haskins, the mayor of the city during the time period at issue. Plaintiff now appeals the order of the district court which granted defendants' motion for summary judgment with respect to the breach of contract and 42 U.S.C. § 1983 claims, and which further dismissed all other claims.

---

* The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

The facts surrounding plaintiff's termination do not appear to be in dispute. He was hired effective March 28, 1989, as the city administrator at a salary of $42,500 per year for a three-year contract, with annual performance evaluations and severance pay in the amount of three months' salary. At this time plaintiff signed a document entitled "Contract," which stated that the terms of the city personnel manual would apply to his job.

In spite of the "three-year" contract, the city council evaluated plaintiff's performance each year and created a new contract for the forthcoming year. Over time, the severance pay provision of the contracts was increased from three to eighteen months. According to plaintiff, the severance pay adjustments were granted in lieu of salary increases.

Before the 1992 elections, plaintiff had some contact with defendant Ray Haskins regarding a dispute over a zoning violation and with city council member, defendant H.R. Johnston, regarding a dispute about expenditures by the Douglas Community Club. Plaintiff claims that these dealings were the beginning of personal vendettas against him.[1]

In April, 1992, plaintiff received a unanimous "strong overall rating" from the city council and Mayor Haskins. At that time there was an agreement to extend plaintiff's contract term to April, 1994, with an increase in severance pay to eighteen months. Mayor Haskins vetoed this contract, but the veto was overturned by a council vote of two to one. Soon after this, there was another election; and an entirely new city council was elected with two of the three new members being Trent Kaufman and defendant Johnston. It appears that the severance pay provision in plaintiff's new contract was a very real issue in the campaign, and the two former members of the council who had voted in favor of plaintiff's contract did not even survive the primary election. It further appears that additional opposition arose because the city's reserves had shrunk almost 50% during plaintiff's tenure as administrator, and many voters also believed that plaintiff had not been sufficiently "responsive" to citizen complaints.

After the new council members took office, the city attorney who had drafted plaintiff's contract was forced to resign; a new city attorney was hired, and on January 25, 1993, the new council members with one dissent approved defendant Johnston's motion to declare plaintiff's contract void with the provision that plaintiff would continue to work at the pleasure of the mayor and city council with his present pay and benefits. No hearing on this action was had, and plaintiff's protest was unsuccessful.

On June 14, 1993, the council voted to terminate plaintiff as the city administrator, effective immediately, with only 30 days' severance pay.

■ After our review of the record, we conclude that the district court properly found that plaintiff could have no claim for breach of contract since his April 18, 1992, contract was voidable and was properly voided by the new city council on January 25, 1993. Under Wyoming law, it is clear that a personal services contract which binds a governmental entity beyond its governing body's current term is voidable unless it can be found to be reasonable or necessary for the operation of that governmental body. In *Mariano and Assoc. v. Sublette Cty. Com'rs.*, 737 P.2d 323 (Wyo.1987), an accounting firm contracted to perform auditing services for Sublette County, Wyoming, for two fiscal years ending June 30, 1985. In March, 1985, one of the members of the firm left and approached county officials about obtaining the 1985 auditing contract for himself at a

---

1. Plaintiff claims that the zoning dispute arose because a second-hand store run by the Holabauns, friends and/or employers of Haskins, violated zoning laws. The local zoning board refused to grant a variance to the business, and Haskins became upset because of plaintiff's part in the dispute.

During the same time period, Johnston, a board member, and later president of the Community Club got into a dispute with plaintiff over issues regarding the golf course, run by the club but supported in part by public money. Johnston resented interference from the city and blamed plaintiff for making the club accountable for public money.

Plaintiff further alleged that Trent Kaufman and defendant Haskins bore a personal grudge against him because their friend, one Rick Marler, had lost his job with the city.

lower cost to the county. The county accepted the offer and terminated the first contract. In finding that the first contract was voidable, the Supreme Court of Wyoming summarized the rule in this manner:

... The legislature has primary jurisdiction to determine validity requirements for governmental contracts. Subject thereto, an agreement extending beyond the term of the contracting authority (normally the first Monday of odd-numbered years) may be voidable by the government or void upon attack by a third party if, under the facts and circumstances, the agreement is not reasonably necessary or of a definable advantage to the city or governmental body. *The issue when raised is decided as a matter of law,* and the burden of evidence of the actual facts defining convenience and necessity devolve either upon the non-governmental contracting party when attacked by the government or upon the third party who separately might attack the validity of the contract. (737 P.2d at 331–332). (Emphasis supplied)

Following *Mariano,* the Wyoming Supreme Court has continued to recognize the voidability of government contracts. Thus, in *Keabler v. City of Riverton,* 808 P.2d 205 (Wyo.1991) twenty-two employees of the city of Riverton, including ten police officers and other employees essential to city services, filed a declaratory judgment and breach of contract action after the city council voted to discontinue the employee insurance program. In an effort to avoid the ruling in *Mariano,* the employees urged they held key positions with the city and that the insurance coverage which had been provided was beneficial and essential in carrying out city functions. The Wyoming court noted that while a "secure, stable, and fully insured work force is beneficial to the City," there was no evidence to indicate that providing the employees with insurance "was reasonably necessary or of a definable advantage to the City." Under these circumstances, the court held that, even assuming that the city's personnel policies and procedures manual had the force of a contract, the insurance agreement was voidable since there was no material fact "which would demonstrate that it was reasonably necessary or of a definable advantage to the city to extend the insurance coverage beyond the term of the Riverton City Council which adopted the personnel policies and procedures manual providing such insurance." (808 P.2d at 207).

More recently, in *Michie v. Board of Trustees,* 847 P.2d 1006 (Wyo.1993), the Wyoming court approved a summary judgment in favor of the board of trustees of a county school district which had terminated the health insurance of an elected member of that board. The school district maintained an insurance program for its employees, and at a board of trustees' meeting held in October, 1984, the board attorney advised that board members could participate in it if each paid his own premium. Members of the board were informed that the plan would not be limited to their terms on the board of trustees. Plaintiff Michie, who canceled his family health insurance and enrolled under the district's plan, effective December 1984, did not serve on the board after 1988. In March, 1989, the then-elected board of trustees voted unanimously to disallow participation in the district insurance plan by all board members, past or present. Michie first filed an action in federal court, setting out claims based on breach of contract, promissory estoppel, the provisions of 42 U.S.C. § 1983 for deprivation of property without due process of law, and a claim for punitive damages for alleged willful and wanton misconduct by the board of the trustees. Relying on the decision in *Mariano, supra,* the federal district court granted summary judgment to the board on the contract and Title 42 claim, finding plaintiff had no § 1983 claim because he did not possess a property right in law or equity to continue participation in the insurance plan. The promissory estoppel claim was dismissed without prejudice for lack of subject matter jurisdiction. Michie then filed a state action renewing the promissory estoppel claim, and summary judgment was entered for the board.[2] In affirming the judgment, the Wyoming court, relying upon *Mariano* and *Keabler, supra,* stated:

The public policy underlying the rule first articulated in *Mariano & Associates, P.C.,* and later applied in *Keabler* is

2. Mrs. Michie was an additional plaintiff in the state promissory estoppel action. As a diabetic,

straightforward. A governing body should not be able to deprive its successor in interest of discretion to act for the public good.... We believe that this policy applies not only to extended-term governmental contracts but also to extended-term governmental promises which do not constitute formal contracts. Accordingly, both are voidable absent a showing of reasonable necessity or definable advantage. The Michies were not able to satisfy this requirement in federal court and are collaterally estopped from attempting to do so now. The equities of this case do not support the application of the doctrine of promissory estoppel against the Board of Trustees. The Board of Trustees was entitled to a summary judgment as a matter of law. (847 P.2d at 1010).

In *Farnsworth v. Town of Pinedale, Wyo.*, 968 F.2d 1054 (10th Cir.1992), a town council, following an election and implementing campaign promises, voted in May, 1988, to disband the local police force, revoke previously adopted personnel policies, and not to reappoint certain town officers, including the chief of police, the city clerk/treasurer, and the supervisor of public works. Several former employees of the town who had lost their jobs in these changes filed suit alleging they had been deprived of Fourteenth Amendment due process since they possessed a protected property right in continued employment under personnel policies originally adopted by the town in 1969. The district court entered summary judgment for defendants in the case; and, on appeal, a panel of this court affirmed that judgment, finding that under Wyoming law the mayor and councilmen had the power of appointment and removal of city officials and that they were not bound by the terms of employment set out by their predecessors in office. While the plaintiffs in *Farnsworth* contended that the new councilmen were motivated by personal animosity and not by fiscal concerns, we did not find that argument to be persuasive:

> Even when viewed in a light most favorable to Appellants, we do not perceive

these allegations sufficient to allow a reasonable jury to conclude that the elimination of the police department was pretextual in light of the financial savings which were realized and the fact that Appellees were simply fulfilling publicly made campaign promises. (968 F.2d 1058) [3]

In the case before us, plaintiff contends that his contract with the city was reasonably necessary and of a definable advantage to the city since the nature of his work could not be performed simply in one year and needed his continued guidance. He also claims that there was an economic benefit to the city because he took the increased severance pay benefits in exchange for an increase in salary. On this issue we agree with the trial court which pointed out that this is not the test under the *Mariano* decision:

> The question which must be decided is not whether the contract itself was necessary or beneficial to the city, rather, the appropriate inquiry is whether, at the time the contract was made, the *extension of the term of the contract* beyond the term of the board's tenure was both reasonably necessary and of definable advantage to the city ... Here the answer to that question is no. (Emphasis of the court). (Appellant Appendix at p. 193)

In arriving at this conclusion, the trial court noted that there was no suggestion that the city was unable to complete ongoing projects after plaintiff was terminated, that there were many candidates for city manager positions, and the city hired an administrator to replace plaintiff on much more favorable terms. In this connection, it appears that after plaintiff was terminated, the vacancy was advertised, and the city received 130 applications for the position. Bobbe Fitzhugh, who had worked as the assistant city administrator, was selected to fill the vacancy, and on November 22, 1993, she signed a contract providing for an "indefinite term" as an "at will" employee, at a salary of $43,000 per year with a provision for only three

she was unable to purchase new health insurance after the school district policy was canceled.

3. It was undisputed that the action of the new town council resulted in a savings to the town of over $300,000 during the mayor's two-year term of office.

months' severance pay. (Ex. 30, Appellee Brief, p. 310). Under all of these circumstances, we fully agree with the district court's conclusion regarding the binding effect of the *Mariano* decision:

> Finally, it appears as if the former city council was doing exactly that which the rule articulated in *Mariano* was designed to prevent. That is, it was attempting to bind its successors to its decisions and policies by forcing the new council to retain Mr. Figuly as the City Administrator. In the event that the council decided to terminate Figuly's employment, the severance pay guarantee would cost the city approximately $68,000, which would be payable to Figuly. This created a great disincentive to the incoming council to terminate Figuly, even if it determined that his performance was inadequate or was no longer desired by the public.

> Although the advantage to Mr. Figuly is clear; he could retain his position with the city, the extension of his contract was not reasonably necessary or of definable advantage to the city. Therefore, Figuly's contract was voidable. (Appellant Appendix p. 194).

██ Since the contract was voidable and was in fact declared to be void by the new city council, plaintiff became an employee at will. Although appellant contends that he continued to have a contractual relationship with the city under the terms of the personnel manual or that the city created some type of an implied contract because he retained his "salary and benefits" under the old contract, we agree with the district court's conclusion that, even if the personnel manual applied to appellant's position, it was effectively revoked when the city council resolved to void "all employment contracts" that appellant had with the city. It further appears that the city's Charter Ordinance Number 2 provided that the city administrator served "at the pleasure of the Mayor and Council," and that it specifically excluded the city administrator from the scope of the city's personnel policies.

██ The record supports the trial court's conclusion that under Wyoming law appellant was an at-will employee whose employment with the city could be terminated for any reason or for no reason. Under this circum-

stance, the court properly found that he had no protected property interest in continued employment. The council's action in voiding appellant's existing employment contract did not violate appellant's right to due process, and judgment in favor of defendants on his civil rights' cause of action under § 1983 was therefore appropriate. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim ... (if) the district court has dismissed all claims over which it has original jurisdiction." Accordingly, the dismissal of appellant's remaining state law claims was appropriate.

The order granting defendants' motion for summary judgment on the breach of contract and 42 U.S.C. § 1983 claims and dismissing all other claims is AFFIRMED.

