Diane JEWELL, Appellant (Plaintiff),

v.

NORTH BIG HORN HOSPITAL DIS-TRICT, by and through its Board of Trustees; and Kent Kellersberger, Ap-pellees (Defendants).

No. 97–6.

Supreme Court of Wyoming.

Feb. 2, 1998.

S. Joseph Darrah and Joseph E. Darrah of Darrah & Darrah, P.C., Powell, for Appellant.

Michael K. Davis of Yonkee & Toner, Sheridan, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Appellant Diane Jewell was terminated from her position with Appellee North Big Horn Hospital District (hospital) and brought suit alleging contract and tort claims. The district court granted summary judgment to the hospital.

We reverse in part and affirm in part.

## ISSUES

Jewell presents these issues for our review:

A. Was there a material question of fact as to whether an employment handbook disclaimer dated August 13, 1993 was promulgated during appellant's employment.

B. Was the purported disclaimer of the employee handbook dated August 13, 1993 valid as a matter of law.

C. Did the lower court err in dismissing the [claim of] breach of covenant of good faith and fair dealing.

D. Did the lower court err in dismissing the appellant's invasion of privacy claims.

E. Did the court err in dismissing the appellant's claim of the tort of deceit.

F. Did appellant present valid governmental claims in regard to the appellant's tort claims for deceit, breach of covenant of good faith and fair dealing and invasion of privacy.

G. Was appellant unfairly prejudiced by allowing appellee to assert the doctrine espoused in *Mariano & Associates, P.C. v. Board of County Com'rs. of Sublette County,* 737 P.2d 323 (Wyo.1987) in its reply brief without giving appellant a full opportunity to present full evidence to establish issues of material fact.

The hospital presents these issues:

1. Was the disclaimer involved in this case valid and enforceable as a matter of law, and more specifically:

    a. Did the hospital have the legal right to modify or terminate an agreement of indefinite duration upon reasonable notice, without additional monetary consideration?

    b. Did the disclaimer comply with the legal requirements of prominence and conspicuousness imposed by this Court?

2. If the Court determines that consideration is required for an employer to materially change its handbook:

    a. Does the rule of *Mariano and Associates* apply where a decision to modify a handbook distributed during the term of a previous Board of Trustees was made by the hospital's CEO and Human Resources Director?

    b. If the *Mariano* rule applies in this case, was Appellant prejudiced by the fact that the issue was not raised before Appellees' summary judgment reply brief?

3. Was there any genuine issue of material fact in the record as to whether Appellant actually received a disclaimer which caused her to be an at-will employee before the events leading to her resignation?

4. Did the trial court err in granting summary judgment on Appellant's claim for breach of an implied covenant of good faith and fair dealing when she was allowed to resign in order to obtain benefits that she would otherwise have lost through termination?

5. Did the trial court err in granting summary judgment on Appellant's "deceit" claim:

    a. On the undisputed facts?

    b. Under the Governmental Claims Act?

6. Regardless of the Court's decision concerning the hospital's liability, was there any factual basis for a claim against Appellee Kellersberger?

## FACTS

Until she was given a choice to resign or be discharged, Jewell worked at the hospital for thirty years without incident. Her last position was as laboratory director at the hospital which includes a nursing home. As a long term employee, she received high pay and benefits and, as a key employee, was subjected to a high call-back rate which resulted in overtime pay and generously increased her pay. Because of budgetary

problems, Jewell's overtime and her requests for a scheduled raise had caused a conflict between her and Chief Executive Officer Kellersberger who had begun work at the hospital in April of 1993. Her overtime had also been the subject of discussion among Kellersberger's management team which viewed it as excessive and unwarranted. Jewell's employment was terminated on September 1, 1993.

Jewell brought suit against the hospital alleging that she had been fired from her position under the false pretext of patient abuse. The basis of this accusation was an incident which occurred on August 27, 1993, when Jewell was in the nursing home drawing blood from a combative Alzheimer's patient being restrained by two nurse's aides. The blood was drawn from the patient in a room containing a whirlpool tub which remained on during the blood drawing procedure. The patient was seated in an elevated chair which placed her head above Jewell's. As Jewell withdrew the needle and began to place a cotton ball over the injection site, the patient leaned down and spit in Jewell's face. Jewell raised her hand to wipe away the spit and made contact with the patient's face.

A nurse and the nurse aids gave statements that Jewell struck the patient. The nurse, Karen Anderson, reported the incident to management, and an intensive investigation followed. Jewell denied intentionally striking the patient and explained that contact occurred when she raised her hand to wipe away the spit while the patient thrashed about in the chair. Three other employees reported that Jewell admitted to slapping the patient. Jewell acknowledges the conversations occurred but denies that she admitted to patient abuse. Jewell was suspended until all of the statements were reviewed by Kellersberger. Kellersberger decided to terminate Jewell's employment unless she resigned. Following a conversation with the directors of personnel and nursing, Jewell decided to resign believing that a resignation would preserve her unblemished employment record, unemployment benefits, payment for all of her sick leave and other fringe benefits. Shortly afterwards, the nurse who reported the incident, Karen Anderson, was heard telling the new lab manager that he had her to thank for his job because she had gotten rid of Jewell. Others inside and outside of the hospital became aware that Jewell's employment had been terminated for patient abuse. Jewell was reported to a state agency for patient abuse. During discovery in this litigation, Jewell determined that other incidents involving allegations of patient mistreatment against other hospital personnel, many of which were serious, were handled according to a progressive disciplinary procedure.

An employee handbook which the parties have agreed applies to Jewell was issued in 1989. It distinguishes between probationary and regular employees, advising that a probationary employee's employment may be terminated for any reason and advising that for regular employees, a disciplinary procedure existed which would progress from verbal warning to written warning, and then to termination. The hospital claims that it issued a disclaimer to this handbook in August of 1993 which effectively modified Jewell's employment to an at-will status. Jewell and other employees dispute that the disclaimer was issued.

Jewel claims that she resigned in exchange for Kellersberger's promise that the accusations would remain confidential and her professional reputation would be protected. She brought suit claiming breach of her employment contract and tort violations based upon the breach of promises made in exchange for her resignation. The district court granted summary judgment to the hospital, and this appeal followed.

## DISCUSSION

*Employment Status*

██ In Wyoming, employment is at-will unless an express or implied contract establishes employment that may be terminated only for cause. *Loghry v. Unicover Corp.*, 927 P.2d 706, 710 (Wyo.1996). An employee handbook may constitute an implied contract if it intends to create an expectation that employment will not be terminated except for cause. *Id.; Leithead v. American Colloid Co.*, 721 P.2d 1059, 1062–63 (Wyo.1986).

Such intent may be found in terms that provide for termination only upon cause or provide a particular method for accomplishing terminations. *Brodie v. General Chemical Corp.*, 934 P.2d 1263, 1265 (Wyo.1997).

The hospital concedes that the 1989 handbook constituted an agreement with the hospital that Jewell could be discharged only for good cause. It also concedes that there exists an issue of fact as to whether Jewell actually slapped a patient. The hospital, however, contends that the disclaimer generated at about the same time as Jewell's contemplated termination caused Jewell's employment status to change to at-will before she was discharged, and she could, therefore, be dismissed for any or no reason.

*Brodie* established that an employer must give consideration when it modifies a handbook from an implied for cause contract to one of at-will employment. *Brodie*, 934 P.2d at 1268. The hospital acknowledges that it did not provide consideration, but contends that consideration is not required according to our decisions in *Police Protective Ass'n of Casper v. City of Casper*, 575 P.2d 1146, 1149 (Wyo.1978), and *Mariano and Associates, P.C. v. Bd. of County Comm'rs of Sublette County*, 737 P.2d 323 (Wyo.1987). The hospital argues that in *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 218 (Wyo.1994), this Court stated that an implied handbook contract is one of indefinite duration that may be terminated by either party upon notice. In the hospital's view, *Brodie* did not address this aspect and has resulted in employers being bound by their handbook contracts in perpetuity which is forbidden by the decision of *Police Protective Ass'n*.

Under Wyoming's employment jurisprudence, employment of indefinite duration is employment which may be terminated at the will of either party for any or no reason. *Brodie*, 934 P.2d at 1265. Our employment handbook decisions modified the at-will employment rule for those situations in which it was determined that the employer intended to modify at-will employment by providing job security. Those decisions held that the at-will rule did not prohibit this Court from recognizing this intent and upholding the implied contract. *Id.; McDonald v. Mobil*

*Coal Producing, Inc.*, 820 P.2d 986, 990 (Wyo.1991). *Brodie* determined that the at-will rule would not prohibit this Court from applying the well-established contract principle that a contract cannot be unilaterally modified; bargained for consideration is required. *Brodie*, 934 P.2d at 1267–68.

The hospital's contention that our decisions mean that employers are held to the contract in perpetuity is not valid. Black's Law Dictionary defines perpetuity as "continuing forever." BLACKS LAW DICTIONARY 1141 (6th ed.1990). In *Police Protective Ass'n*, the court reviewed a collective bargaining agreement and characterized it as continuing in perpetuity, binding two organizations forever. *Police Protective Ass'n*, 575 P.2d at 1149. Organizations are immortal and can continue forever, whereas, humans are mortal. In the employment context, a valid and effective disclaimer can be distributed to new employees, and eventually an employer will only employ those with an at-will status. The difference between the two situations is obvious and demonstrates that an implied handbook contract of indefinite duration does not continue in perpetuity and is not void. The hospital also expresses concern that the rule of *Brodie* prohibits a reduction in force for justifiable economic reasons. *Brodie* does not address this issue and cannot be said to prohibit it.

The hospital next contends that *Mariano* permits the hospital, as a governmental entity, to declare void contracts which were made during the term of a previous governing body and which are not reasonable and necessary to the entity. The hospital points out that the handbook here was distributed in 1989 and the disclaimer in 1993, and a new North Big Horn Hospital District Board was sworn in September of 1992. It contends that the new Board had the right, through its agents, to void any existing contracts which were not reasonable and of definable advantage to the hospital; it did so through Kellersberger; and *Mariano* does not require consideration be paid to support voiding contracts.

The language of *Mariano* allowing challenge of a contract that is not reasonably

necessary or of definable advantage to a governing body is not likely to extend to an implied employment contract for hospital employees of a public hospital. We do not have to reach that issue, however, because *Mariano's* holding is in terms of the governing body, not an administrator who does not show the Board's formal authorization for his actions. *Mariano*, 737 P.2d at 331. Here, the governing body did not void the job security contract contained in the handbook; consequently, the 1989 handbook without the disclaimer is the applicable contract, and the hospital must show cause for termination.

It is clear from the record that Jewell was terminated for patient abuse. She admits to contact with the patient, and whether that contact is described as tapping, bumping, or slapping, Jewell has maintained that the contact was inadvertent and not intended as abuse. These facts present a genuine issue of material fact as to whether Jewell was discharged for cause. Additionally, the contract provided for a disciplinary procedure that progressed from warnings to termination. Because Jewell was summarily dismissed, a genuine issue of material fact as to whether discharge was the appropriate discipline according to her contract is presented which must be decided at trial.

The order of the district court granting summary judgment on the issue of breach of contract is reversed and remanded for trial.

### Breach of the Covenant of Good Faith and Fair Dealing

■ The hospital contends that our previous decisions hold that longevity of employment alone is not enough to establish a tort claim for breach of the covenant of good faith and fair dealing. It argues that the motivation for Jewell's termination must have been to deprive her of either retirement benefits or some other benefits other than the loss of pay and benefits normal to any termination. Pointing out that Jewell has not provided a record establishing such a motivation, the hospital contends there was not breach of the covenant as a matter of law and summary judgment must be affirmed. Jewell contends that a jury question is presented regarding the motivation for her termination.

*Wilder* established that this particular tort required a showing that a special relationship of trust and reliance existed between the employer and the employee. *Wilder*, 868 P.2d at 221. *Wilder* warned this standard applies rarely, and our previous decisions on the issue have all determined that the particular facts involved did not show that a special relationship existed as a matter of law. The existence of a special relationship, however, is a question of fact, not a question of law, and is to be decided by the trier of fact unless reasonable minds could not differ. *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 237, 765 P.2d 373, 399 (1988).

In this case, the record establishes that a jury could reasonably decide that Jewell was improperly discharged for the purpose of denying her a scheduled pay raise and other possible benefits associated with her longevity and for which Jewell had remained with the hospital for thirty years. *Wilder*, 868 P.2d at 221–22. The order of the district court granting summary judgment to the defendants on this issue is reversed and remanded for trial.

### Other Tort Claims

■ Jewell presents tort claims for deceit and invasion of privacy, contending that the hospital made misrepresentations to her to secure her resignation and released the confidential information that she had been fired for slapping a patient. In a recent decision, *Townsend v. Living Centers Rocky Mountain, Inc.*, 947 P.2d 1297 (Wyo.1997), in an at-will employment context, we held that the available causes of actions for an employment termination were limited to contract actions and tort actions for breach of the implied covenant of good faith and fair dealing, retaliatory discharge, and intentional infliction of emotional distress. *Id.* at 1299.

*Townsend* was based upon a determination that issues arising out of the employment contract should be decided according to contract principles. In this case, Jewell's allegations of deceit and invasion of privacy directly result from events surrounding the manner of her discharge and, for these

claims, we will extend *Townsend* to the for-cause employment context. Because in Wyoming, a choice to resign or be fired is recognized as constructive discharge, Jewell has claims for breach of contract and breach of the implied covenant of good faith and fair dealing, but cannot pursue claims for deceit or invasion of privacy. *Wilder,* 868 P.2d at 217; *Townsend,* 947 P.2d at 1299.

Summary judgment on the breach of contract and breach of the implied covenant is reversed and remanded for trial.