Leon E. ANDERSON, Appellant
(Plaintiff),

v.

The SOUTH LINCOLN SPECIAL CEME-
TERY DISTRICT, By and Through the
BOARD OF TRUSTEES OF the SOUTH
LINCOLN SPECIAL CEMETERY DIS-
TRICT; and Marta Gunter, individually
and in her official capacity, Appellees
(Defendants).

No. 98–16.

Supreme Court of Wyoming.

Jan. 29, 1999.

Richard Beckwith of Greenhalgh, Beckwith, Lemich and Stith, P.C., Rock Springs, Wyoming, for Appellant.

William H. Twichell, Pinedale, Wyoming, for Appellee South Lincoln Special Cemetery District.

Dennis W. Lancaster of Phillips & Lancaster, P.C., Evanston, Wyoming, for Appellee Marta Gunter.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

When his contract for employment as superintendent of the South Lincoln Special Cemetery District was not renewed, appellant, Leon E. Anderson (Anderson), brought this action against appellees, the South Lincoln Special Cemetery District by and through the Board of Trustees (the Board) and individual Board member Marta Gunter (Gunter). In a multi-count complaint, Anderson claimed wrongful termination; breach of the covenants of good faith and fair dealing; denial of procedural and substantive due process; and tortious interference with his employment contract by Gunter. Summary judgment in favor of appellees disposed of all claims. We affirm.

## I.  ISSUES

Anderson submits the following statements for review:

I.  Did the district court err when it ruled as a matter of law that the appellant was an employee at will?

II.  Did the district court properly address plaintiff's assertion that the written agreement of February, 1994, was supported by consideration?

III.  Did the district court err when it ruled as a matter of law that the appellee District did not breach the covenants of good faith and fair dealing when it terminated the appellant?

   A.  Were there questions of material fact regarding the existence of a special relationship between the appellant and appellee District?

   B.  Were there questions of material fact regarding the bad faith motives of the appellees in terminating the appellant?

IV.  Did the district court err when it ruled as a matter of law that appellee Gunter enjoys immunity from liability for tortiously interfering with the appellant's employment contract?

V.  Did the district court err when it ruled as a matter of law that appellant had no property interest in his employment?

The Board responds:

I.  Did the district court err when it ruled as a matter of law that the appellant was an employee at will?

II.  Did appellee District according to *Mariano & Associates, P.C. v. Board of County Commissioners of Sublette County,* 737 P.2d 323 (Wyo.1987) have the right to terminate the revocable oral employment contract and/or not renew the written agreement of February, 1994?

---

* Chief Justice at time of oral argument; retired 11/2/98.

III. Did the district court properly address appellant's assertion that the written agreement of February, 1994, was wholly unsupported by consideration?

IV. Did the district court err when it ruled as a matter of law that the appellee District did not breach the covenants of good faith and fair dealing when it terminated the appellant?

   A. Are there questions of material fact regarding the existence of a special relationship between the appellant and appellee District?

   B. Are there questions of material fact regarding alleged bad faith motives of appellee District in terminating the appellant?

   C. Are there questions of material fact regarding alleged bad faith motives of appellee Gunter in terminating the appellant?

   D. Does appellant need to establish a question of material fact that the termination occurred as a means to avoid payment of benefits already earned under the contract of employment to prevail on the tort theory?

V. Did the district court err when it ruled as a matter of law that appellee Gunter enjoys immunity from liability for tortiously interfering with the appellant's employment contract?

VI. Did the district court err when it ruled as a matter of law that appellant had no property interest in his employment?

Gunter responds:

1) Whether the district court's award of summary judgment in favor of appellee Gunter is supported legally by the facts, the record and the law.

## II. FACTS

In October of 1979, Anderson was hired as the superintendent of the South Lincoln Special Cemetery District. At the Board meeting, when his prospective employment was discussed, Anderson was told by the chairman that as long as he did a good job, he would be there for as long as he wanted. Although no written contract was executed, Anderson maintains the chairman's statement bestowed employment which could be terminated only for cause. Anderson admits, however, he knew at the time he was hired that one board could not bind future boards.

The terms of Anderson's employment were not again discussed until 1993 when the Board decided to update its policies and make the superintendent position "contractual." The minutes of the Board meeting of May 1993 reflect the submission of a draft of the updated policies and Anderson's contract by the Board's attorney. In the minutes of the Board meeting of September 1993, Anderson confirmed that his contract modifications had been incorporated into the current draft.

The written contract encompassed a one-year term of at-will employment beginning July 1, 1994 and ending June 30, 1995. Termination prior to the contract's expiration date required thirty days written notice, and if early termination was initiated by the Board, Anderson was entitled to sixty days compensation. Anderson never informed the Board that he believed he was not an at-will employee during the contract discussions.

In February 1994, the Board sent Anderson a copy of the contract for his signature. The contract was accompanied by a letter which stated he must sign and return the contract before the Board meeting in March, or the Board would begin a search for his replacement prior to finalizing the budget in May. Anderson signed and returned the contract.

February 1994 also heralded the appointment of Gunter, Anderson's former mother-in-law, to the Board. The past relationship between Anderson and Gunter was fraught with animosity, and the hostilities did not diminish after Gunter's appointment. According to Anderson, Gunter used her power as a Board member to further her repeated threats that she would "run [Anderson and his family] out of town * * *." As examples of Gunter's harassment, Anderson points to a Board investigation, initiated by Gunter, of a party Anderson hosted for his crew mem-

bers. He also alleges Gunter made frequent visits to the District's cemeteries; and on one occasion, followed Anderson's current wife.

In May 1995, the Board notified Anderson that his contract would not be renewed for the next year, and his employment would terminate at the expiration of his contract. Anderson subsequently filed this action, maintaining he was wrongfully terminated without cause due to Gunter's personal vendetta against him. Upon appellees' motion for summary judgment, the district court determined that Anderson was an at-will employee throughout his employment; there was no special relationship with his employer on which to base a good faith claim; and that Gunter, as a member of the Board, was entitled to governmental immunity. This timely appeal followed.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists and, therefore, the prevailing party is entitled to a judgment as a matter of law. *Kirkwood v. CUNA Mut. Ins. Soc.*, 937 P.2d 206, 208 (Wyo.1997); W.R.C.P. 56(c). When reviewing a summary judgment, this court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may fairly be drawn from the record. *Kirkwood*, 937 P.2d at 208; *Garcia v. Lawson*, 928 P.2d 1164, 1166 (Wyo.1996). Where no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law, summary judgment is affirmed. *Treemont, Inc. v. Hawley*, 886 P.2d 589, 592 (Wyo.1994). Summary judgment will be affirmed " '[if] the judgment against the appellant is sustainable on any basis * * *.' " *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 341 (Wyo.1986) (*quoting Valentine v. Ormsbee Exploration Corp.*, 665 P.2d 452, 456 (Wyo.1983)).

### IV. DISCUSSION

#### A. WRONGFUL TERMINATION

Anderson insists that the assurances made by the Board's chairman in 1979 changed his status from employment at-will to an employ-

ment that could be terminated only for cause. He claims that because this agreement was in effect at the time of the 1994 written contract, additional consideration was required before the written contract could effectively return his status to an employee at-will.

■ Summary judgment was granted on the basis that the 1979 oral representations, as a matter of law, were not sufficiently explicit to modify Anderson's employment from an at-will status. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 218 (Wyo.1994) ("a claim by an employee that the employer promised 'permanent' employment does not alter the at will presumption without * * * explicit language in the contract of employment stating that termination may only be for cause."). We need not reach this issue, however, because even if there was an oral contract between Anderson and the 1979 Board, the parties clearly did not intend the agreement to bind later boards.

■ In Wyoming, employment is at-will which may be terminated at any time for any or no reason, unless an express or implied contract establishes employment that may only be terminated for cause. *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1249 (Wyo.1997); *Brodie v. General Chemical Corp.*, 934 P.2d 1263, 1265 (Wyo.1997); *Loghry v. Unicover Corp.*, 927 P.2d 706, 710 (Wyo.1996). An express oral contract may be interpreted as a matter of law when the terms are shown without conflict in the evidence. *Wilder*, 868 P.2d at 218. In this case, the sworn testimony unquestionably demonstrates the mutual understanding of the parties to limit the duration of their alleged contract to the term of the 1979 Board.

Anderson's deposition reveals the following:

Q. And when you were hired there were six members on the board that were elected to that position; is that correct?

A. This is correct.

Q. And those board members changed at every election, basically, didn't they?

A. Approximately every two years three of them come up for election, yes.

Q. You knew this was a governmental entity you were working for when you became employed by that; is that correct?

A. This is correct.

Q. And did you know of any limitations a governmental entity has as far as entering into contracts?

A. I know one board cannot obligate another board.

Q. You knew that when you were employed initially; is that correct?

A. This is correct.

The deposition testimony of the 1979 Board's chairman echoes Anderson's understanding:

If you mean, give him [Anderson] a term, I don't think so; but I would say we probably said as long as the board there—we know, we been on boards before, we knew we couldn't empower another board to do what we'd done, you know. He was probably told that as long as he did the job he would be continually employed. That's all I can tell you.

Thus, it is clear the parties understood that if they had an agreement, it expired upon the election of a new board, an event which occurred at least every two years.

Further, Anderson admits he did not discuss employment terms with a later Board until the contract discussions in 1993 and 1994. Therefore, Anderson cannot show his status was anything other than at-will when he signed the 1994 written contract. Since his employment status was not modified by the terms of the 1994 contract, no additional consideration was required to give effect to the written agreement. *Wilder,* 868 P.2d at 219.

The unambiguous language of the 1994 contract clearly stated that Anderson remained an employee at-will for one year. The only change in the terms of his employment from 1994–95 was additional notice and pay should the Board terminate Anderson without cause prior to the expiration of his contract. There is no evidence that the Board breached these terms, and no evidence of an implied or express promise that the contract would be renewed. Consequently, the Board was under no obligation to continue Anderson's employment, and his claim for wrongful termination must fail as a matter of law.

## B. GOOD FAITH AND FAIR DEALING

Similarly, Anderson's claim that he has presented factual issues regarding a breach of the covenant of good faith and fair dealing is without merit. In recognizing a limited tort claim for breach of an implied covenant of good faith and fair dealing in employment contracts, we have repeatedly stressed that only in rare and exceptional cases is a duty created which gives rise to tort liability. *Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 277 (Wyo.1997); *Loghry,* 927 P.2d at 712 (*citing Wilder,* 868 P.2d at 221); *Garcia v. UniWyo Federal Credit Union,* 920 P.2d 642, 646 (Wyo.1996).

A showing is required that a special relationship of trust and reliance exists between the particular employee seeking recovery and the employer. * * * Trust and reliance may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service.

*Wilder,* 868 P.2d at 221. A long employment relationship, alone, is not enough to create the required special relationship. *Garcia,* 920 P.2d at 646.

Anderson does not allege separate consideration or a violation of rights existing under common law or statute. Neither does he claim the Board failed to renew his contract for the purpose of avoiding responsibilities or obligations due him. Instead, Anderson maintains that because his job duties exceeded those of a "mere employee," his position should be likened to a "chief executive officer" commanding a special relationship of trust and reliance.

Ironically, Anderson supports this argument by referring to the duties enumerated in the 1994 contract; the same document clearly designating his at-will status. A fundamental limitation on implied covenants is that they cannot create duties that supersede the express provisions of a written contract. *Wilder,* 868 P.2d at 221. Thus, whether

Anderson was a "chief executive officer" or a "mere employee," the failure to renew his contract was neither unlawful nor violative of community standards.

## C. IMMUNITY-TORTIOUS INTERFERENCE

Anderson asserts that there is a question of fact as to whether Gunter's machinations to terminate his employment were outside the scope of her duties as a Board member, precluding the district court's application of governmental immunity as a matter of law. Again, we need not reach this question because, even were we to assume that Anderson is correct, he simply cannot present a valid claim against Gunter for tortious interference with a contract.

To prevail on a claim of tortious interference with a contract, the claimant must show the claimed interference was improper, and induced or caused a breach or termination of the relationship or business expectancy. *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686, 697 (Wyo.1996); *Ames v. Sundance State Bank*, 850 P.2d 607, 611 (Wyo.1993). Because there was no breach of the contractual terms, and Anderson had no legitimate expectancy that the contract would be renewed, Anderson's claim against Gunter for interference with the contract must fail.

## D. DUE PROCESS CLAIM

Finally, the district court correctly ruled as a matter of law that Anderson failed to demonstrate a violation of substantive or procedural due process. A claimant must show a property interest in his employment, which may arise when sources such as state statutory law, regulations, or the terms of employment create a "legitimate claim of entitlement" to certain benefits of employment. *City Council of Laramie v. Kreiling*, 911 P.2d 1037, 1045 (Wyo.1996). As an employee at-will under a contract terminating on a specific date, Anderson had no legitimate claim of entitlement in continued employment with the South Lincoln Special Cemetery District, and, therefore, was not denied either substantive or procedural due process.

## V. CONCLUSION

As a matter of law, Anderson was an at-will employee at the time he entered into the 1994 written employment contract, and, therefore, the contract continuing his at-will status was supported by sufficient consideration. Since Anderson failed to show any breach of his employment contract or implied covenant, summary judgment in favor of the South Lincoln Special Cemetery District and Marta Gunter is affirmed.