J. Fŕederick SOWERWINE and Judy
Sowerwine, husband and wife,
Appellants (Defendants),

v.

Robert J. KEITH and Michele R. Keith,
husband and wife, Appellees
(Plaintiffs).

No. 99–190.

Supreme Court of Wyoming.

Feb. 24, 2000.

Representing Appellants: George L. Simonton of Simonton and Simonton, Cody, Wyoming.

Representing Appellees: Chris D. Edwards and Colin M. Simpson of Simpson, Kepler & Edwards, LC, Cody, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

MACY, Justice.

Appellants J. Frederick Sowerwine (Fred) and Judy Sowerwine (Judy) appeal from the district court's order granting a summary judgment in favor of Appellees Robert Keith (Robert) and Michele Keith (Michele).

We affirm.

## ISSUES

The Sowerwines present a single issue for our review: "Whether Summary Judgment in Plaintiffs' favor was proper."

## FACTS

In June of 1993, the Sowerwines decided to sell a piece of property consisting of approximately 183 acres which was adjacent to property owned by the Keiths. Fred communicated his intention to sell the land to an employee of the Keiths who forwarded the information along to Robert. The Keiths were interested in purchasing the property, and they entered into negotiations with the Sowerwines to do so. During these negotiations, the parties discussed Fred's father's access rights across the property to BLM and forest service lands.

Although an agreement between the parties was reached for the Keiths to purchase approximately 120 acres, the issue of Fred's father's access rights had not been settled. The Keiths' attorney sent a contract for deed, memorandum of agreement, warranty deed, and quitclaim deed to the Sowerwines along with a cover letter on June 24, 1993. The cover letter included a sentence stating: "Robbie Keith has agreed to negotiate with your father . . . concerning horseback access to public lands."

The parties closed on the property on or about July 8, 1993, and the Keiths made their first payment. The final documents did not include a provision regarding access rights, and the Keiths and Fred's father were ultimately unable to come to an agreement. The Keiths would only agree to grant permission to cross the land which could be revoked by them at any time, and Fred's father insisted that he be granted a permanent easement, not wanting his access rights to be subject to termination at the Keiths' discretion.

On July 24, 1993, Fred sent a letter to Robert after he learned the Keiths were not allowing anyone access across the property. The letter informed Robert that, pursuant to their agreement, he needed to negotiate an arrangement with Fred's father that contained conditions which, if met, would guarantee the renewal of his access rights. Subsequent letters to the Keiths from both Fred and his father ensued, to which the Keiths did not respond. On February 10, 1994, Robert sent a letter to Fred in which he stated that the only right of access he was willing to grant was one he could cancel at his discretion.

On May 24, 1994, exercising their right to prepay the contract, the Keiths paid the outstanding balance on the contract and requested the Sowerwines to sign the letter authorizing the escrow agent to deliver the deed and certifying termination of the con-

tract for deed. The Sowerwines responded with a letter declaring the Keiths in default of the contract for deed because of their refusal to negotiate an access easement with Fred's father. The Sowerwines indicated they would exercise their right to enter the property and take possession.

The Keiths filed suit, seeking specific performance. Both parties filed motions for summary judgment. After a hearing on both motions, the district court denied the Sowerwines' motion and granted the Keiths' motion. The Sowerwines appeal from that decision.

## STANDARD OF REVIEW

■ A summary judgment is appropriate when no genuine issue as to any material facts exists and the prevailing party is entitled to have a judgment as a matter of law. *O'Quinn Enterprises v. Central Wyoming Regional Water System Joint Powers Board,* 975 P.2d 1062, 1063 (Wyo.1999); *see also* W.R.C.P. 56(c). We view the record from the vantage point most favorable to the losing party, awarding that party all the favorable inferences that may be fairly drawn from the record. *O'Quinn Enterprises,* 975 P.2d at 1063. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as the lower court employed and used. *Wolter v. Equitable Resources Energy Company, Western Region,* 979 P.2d 948, 951 (Wyo. 1999). We do not accord deference to the district court's decisions on issues of law. *Romero v. Schulze,* 974 P.2d 959, 962 (Wyo. 1999). In cases requiring the interpretation of a contract, a summary judgment is appropriate only if the contract is clear and unambiguous. *Wolter,* 979 P.2d at 951.

## DISCUSSION

The Sowerwines contend that the summary judgment in favor of the Keiths was improper because they raised genuine issues of material fact concerning both promissory estoppel and unjust enrichment. The Keiths counter that the summary judgment was properly entered because the materials presented to the district court clearly and unambiguously established the contract between the parties, its terms, and the Keiths' full satisfaction of all the requirements imposed on them by the contract.

■ Whether a contract is ambiguous is a question of law. *O'Quinn Enterprises,* 975 P.2d at 1064. When deciding whether a contract is ambiguous, we endeavor to determine the intention of the parties. *Wolter,* 979 P.2d at 951. An ambiguity exists when a contract's language conveys an obscure or double meaning. *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo. 1997). When contract provisions are not ambiguous or uncertain, the document speaks for itself. 937 P.2d at 209. With an unambiguous agreement, we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the document. *Wolter,* 979 P.2d at 951. All conversations, contemporaneous negotiations, and parol agreements between the parties that occurred prior to the written agreement are merged into the written agreement. *O'Quinn Enterprises,* 975 P.2d at 1064. We turn to extrinsic evidence and rules of contract construction only when the contract language is ambiguous and its meaning is doubtful or uncertain. *Wolter,* 979 P.2d at 951.

■ After reviewing the contract for deed, we conclude that it was not ambiguous regarding the question before us. Because the contract did not include a provision requiring the Keiths to negotiate or allow Fred's father access across the land, we are forced to conclude that the contract was clear on that matter because of the absence of language from which we could find an obscure or double meaning. As we outlined above, this determination precludes us from considering extrinsic evidence regarding agreements or conversations not memorialized in the contract. If an access provision was so imperative, the Sowerwines should have included it in the contract, especially given the fact that the issue had not been worked out at the time of the closing. This Court's hands are tied. We, fortunately or unfortunately, are not at liberty to rescue parties from the consequences of their un-

wisely made bargains. *Patel v. Harless,* 926 P.2d 963, 967 (Wyo.1996).

The Sowerwines insist that the Keiths should be estopped from asserting that the June 24, 1993, letter, wherein the Keiths' attorney stated that Robert had agreed to negotiate access rights, was not part of the contract for deed. Promissory estoppel applies, however, only if a contract does not exist. *Frost Construction Company v. Lobo, Inc.,* 951 P.2d 390, 397 (Wyo. 1998). "Since promissory estoppel applies only if a contract does not exist, a promissory estoppel argument in this case, where the evidence demonstrates the existence of a contract, is incongruous." *Id.*

The Sowerwines also assert an unjust enrichment argument, claiming they would not have sold the property to the Keiths for the amount of money they did had they not believed Fred's father was guaranteed access across the land. Here again, the unjust enrichment remedy is not available when an express contract exists. 66 Am. Jur.2d *Restitution and Implied Contracts* § 6 (1973). The Keiths received only what they were entitled to receive under the contract after they performed their end of the bargain, and, accordingly, they were not unjustly enriched.

We hold that the district court properly granted a summary judgment in favor of the Keiths and affirm its decision.