**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 23 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD DOUGLAS; NANCY
DOUGLAS,

      Plaintiffs - Appellants,

v.

ORKIN EXTERMINATING
COMPANY, INC.,

      Defendant - Appellee.

No. 98-8076
(D.C. No. 97-CV-1029-J)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **KELLY** and **LUCERO**, Circuit Judges.

In this diversity action governed by Wyoming law, plaintiff-appellant

Richard Douglas appeals the district court's grant of summary judgment in favor

of defendant-appellee Orkin Exterminating Company ("Orkin") and the dismissal

of his claims for breach of his employment contract, breach of the implied

covenant of good faith and fair dealing, and intentional infliction of emotional

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

distress.[1] Douglas had become an Orkin employee as part of an integrated transaction which included the sale of his pest-control business to Orkin. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court's dismissal of Douglas's breach of contract and intentional infliction of emotional distress claims and affirm its dismissal of the breach of the implied covenant of good faith and fair dealing claim.

I

Douglas founded, owned, and operated Cowboy Pest Control, Inc., with his wife Nancy. In 1992, he and his wife entered into negotiations with Orkin for the sale of their business, during which they discussed with Orkin a document entitled "Potential Compensation Package," which indicated they would earn up to $663,216 over ten years from the proposed transaction. On March 29, 1994, the parties signed a letter of understanding which outlined a $75,000 purchase price for Cowboy's assets, payment of $50,000 to Douglas and his wife in consideration for a covenant not to compete, employment of Douglas by Orkin as manager of the acquired operation at an annual base salary of $30,000, and a potential earn-out bonus of $15,000 at the end of Douglas's first year of employment. On April

---

[1] Nancy Douglas, Douglas's wife and the second named plaintiff, does not appeal the disposition of her claims below.

28, 1994, the parties signed an Asset Purchase Agreement with a Form of Employment Agreement attached.

The transaction was closed on December 9, 1994. At closing, Douglas and his wife signed a non-competition agreement with Orkin and an agreement assigning to Orkin the employment contracts between Cowboy and its employees. He also signed an Employment Agreement substantially similar to the Form of Employment Agreement attached to the Asset Purchase Agreement. The Employment Agreement contained the following relevant terms:

> 1. The Company hereby employs the Employee as Manager for the Rock Springs location of Orkin Exterminating Company, and agrees to pay the Employee a salary of $2,500 monthly. After the first year, Employee shall receive a Salary Performance Review.
> . . . .
> [1(e).] The Employee's title and/or compensation may be changed periodically after the initial year but, notwithstanding whether the specific changes are reflected in a revised written agreement, the provisions of the balance of this Agreement shall remain in full force and effect.
> . . . .
> [5(c)(ii).] The Company may, at any time, terminate the Employment Agreement, at its option and without notice or payment of any terminal compensation if the Employee shall, at any time, conduct himself in such a manner as to injure or endanger the reputation of the Company, or become involved in any offense involving moral turpitude, or fail to faithfully perform his duties as assigned by the Company in a manner in keeping with this Agreement and the rules and regulations of the Company . . . .
>
> 6. This contract includes the entire agreement of the parties.

(I Appellant's App. at 264-67.)

More than one year after beginning employment with Orkin, both Douglas and Orkin's Regional Manager Howard E. Smith expressed dissatisfaction with Douglas's position and performance. Over the next few weeks, Orkin suggested that Douglas transfer to various other positions including branch manager trainee, technician, sales representative, and a combined sales representative and service technician position. All of those offers were withdrawn because the positions were not actually available. Orkin then offered Douglas a position as a "swing tech[nician]" allegedly paying approximately $1,100 a month plus commissions. (Id. at 160.) The parties dispute whether this position would constitute a demotion as well as the level of his potential earnings with commissions. Orkin asserts that he would have earned at least $2,500 a month in the swing technician position, but Douglas claims it was the lowest-paying position available in the Rock Springs area, with potential earnings of substantially less than $2,500. Douglas turned down the offer and his employment was terminated.

Douglas and his wife brought suit in Wyoming state court against Orkin, alleging breach of contract, breach of the implied duty of good faith and fair dealing, intentional infliction of emotional distress, and promissory estoppel, and seeking punitive damages. Based on diversity of citizenship, Orkin removed the case to federal district court. See 28 U.S.C. §§ 1332 & 1441. The district court

-4-

granted summary judgment to Orkin on all of Douglas's claims. This appeal followed.

## II

We review the grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(c). See United States v. Hess, 194 F.3d 1164, 1170 (10th Cir. 1999). Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. See UMLIC-Nine Corp. v. Lipan Springs Dev. Corp., 168 F.3d 1173, 1176 (10th Cir. 1999); Fed. R. Civ. P. 56(c).

The substantive law of Wyoming applies in this diversity action, see Budd v. American Excess Insurance Co., 928 F.2d 344, 346 (10th Cir. 1991), and in the absence of Wyoming law directly on point, we attempt to predict how Wyoming's highest court would rule, see Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir. 1994); see also Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The district court's interpretation of state law is subject to de novo review. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

## A

We must determine whether Orkin breached its employment contract with Douglas when it terminated him after he refused to accept an alleged demotion

and reduction in compensation. If the language of the employment contract is plain and unequivocal, that language is controlling. See Lyman v. Jennings, 637 P.2d 259, 260 (Wyo. 1981). "[O]ur primary purpose is to determine the true intent and understanding of the parties at the time and place the contract was made." Simek v. Rocky Mountain, Inc., 977 P.2d 687, 690 (Wyo. 1999) (citing Examination Management Servs., Inc. v. Kirschbaum, 927 P.2d 686, 690 (Wyo. 1996)).

The parties dispute whether the provisions of the contract governing the terms of Douglas's employment and termination are ambiguous. This presents a question of law. See Sowerwine v. Keith, 197 P.2d 1018, No. 99-190, 2000 WL 211571, at *2 (Wyo. Feb. 24, 2000). "When deciding whether a contract is ambiguous, we endeavor to determine the intention of the parties." Id. (citing Wolter v. Equitable Resources Energy Co., 979 P.2d 948, 951 (1999)). "Ambiguity exists where a document 'is obscure in its meaning because of indefiniteness of expression or because it contains a double meaning.'" Lamb v. Wyoming Game & Fish Comm'n, 985 P.2d 433, 437 (Wyo. 1999) (quoting Martin v. Farmers Ins. Exch., 894 P.2d 618, 620 (Wyo. 1995)) (further citation omitted). Therefore, "[w]e turn to extrinsic evidence and rules of contract construction only when the contract language is ambiguous and its meaning is doubtful or uncertain." Sowerwine, 2000 WL 211571, at *2 (citing Wolter, 979 P.2d at 951).

It is undisputed that, pursuant to clause 1 of the employment contract, Douglas was initially employed as "Manager for the Rock Springs location of Orkin Exterminating Company" and Orkin "agree[d] to pay [Douglas] a salary of $2,500 monthly." (I Appellant's App. at 264.) After his first year of employment with Orkin, however, the contract provided that he would "receive a Salary Performance Review." (Id.) Clause 1(e) of the contract also provided that his "title and/or compensation may be changed periodically after the initial year." (Id. at 265.) Relying on this clause, Orkin contends it had the contractual right to change his position after one year, as it attempted to do in this case.

The contract also stated, however, that if Douglas's title and/or compensation were changed, "the provisions of the balance of [the employment contract were to] remain in full force and effect." (Id.) The other relevant provision of the contract to which we must give "full force and effect" is clause 5(c)(ii), which encompasses the parties' agreement that Douglas's employment was not at-will, but rather for cause:

> The Company may, at any time, terminate the Employment Agreement, at its option and without notice or payment of any terminal compensation if the Employee shall, at any time, conduct himself in such a manner as to injure or endanger the reputation of the Company, or become involved in any offense involving moral turpitude, or fail to faithfully perform his duties as assigned by the Company in a manner in keeping with this Agreement and the rules and regulations of the Company, or failure to comply with the Company's procedures for insuring strict compliance with these requirements. . . .

(Id. at 266.) Douglas argues these clauses—1, 1(e), and 5(c)(ii)—when read together, are ambiguous and therefore the court must consider parol evidence to determine the intent of the parties.

Douglas's argument hinges on the assertion that a substantial demotion and reduction in pay constitutes constructive discharge. Orkin responds that these clauses can easily be reconciled: "After the first year of employment, whatever position . . . Douglas held, terminating his employment from that position would have to be for cause." (Appellee's Br. at 17.) The crux of the issue does not rest on whether Orkin could change Douglas's title and/or compensation because clause 1(e) clearly contemplates such changes, but rather whether drastic changes in title and compensation may be so unreasonable—when read in conjunction with clauses 1 and 5(c)(ii)—as to constitute a breach of the employment contract. [2]

The doctrine of constructive discharge is most often employed in the context of claims of workplace harassment. In that context, "[c]onstructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable." Yearous v. Niobrara County Mem'l

---

[2] Douglas also contends that the term "title" as used in clause 1(e) is ambiguous because it is unclear whether that term refers to the name associated with a position or the position itself. The only credible interpretation is the latter. Indeed, Douglas adopts this interpretation when he suggests the court should read clause 1(e) as permitting only promotions and salary increases. That interpretation is also unsupported by the language of the contract, which does not distinguish between promotions and demotions.

Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997); see also Woodward v. City of Worland, 977 F.2d 1390, 1401 (10th Cir. 1992). The Wyoming Supreme Court has recognized the doctrine of constructive discharge, but in contexts differing from this case. See Employment Sec. Comm'n of Wyo. v. Western Gas Processors, Ltd., 786 P.2d 866, 871-72 (Wyo. 1990) (finding "that the employer's demand to the employee that he yield up a sample of his urine . . . or resign on the spot was unreasonable and the resulting resignation" constituted a constructive discharge); Jewell v. North Big Horn Hosp. Dist., 953 P.2d 135, 139 (Wyo. 1998) (holding that the plaintiff had stated claims for breach of contract and breach of the implied covenant of good faith and fair dealing because "in Wyoming, a choice to resign or be fired is recognized as constructive discharge"). If the Wyoming Supreme Court has not yet addressed a legal question, we may attempt to predict how that court would decide the question. See Wood, 38 F.3d at 512; Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885, 888 (10th Cir. 1980). In conducting our inquiry, we are free to consider all resources available, including decisions of Wyoming courts or the courts of other states as well as federal court decisions, in addition to the general weight and trend of authority. See id.

We conclude, based on prior Tenth Circuit case law, as well as state precedent from other jurisdictions, that "[a] demotion or reassignment to a job with lower status or lower pay may, depending upon the individual facts of the

case, constitute aggravating factors that would justify a finding of constructive discharge."  James v. Sears, Roebuck & Co., Inc.  , 21 F.3d 989, 993 (10th Cir. 1994);  accord Barrett v. Wyerhaeuser Co. Severance Pay Plan, 700 P.2d 338, 342 (Wash. Ct. App. 1985); Kass v. Brown Boveri Corp., 488 A.2d 242, 245-46 (N.J. Super. Ct. App. Div. 1985); Sanders v. May Broad. Co., 336 N.W.2d 92, 95-96 (Neb. 1983); Miller v. Winshall, 400 N.E.2d 1306, 1310-11 (Mass. App. Ct. 1980); Brock v. Mutual Reports, Inc., 397 A.2d 149, 152 (D.C. App. Ct. 1979); Loos v. Geo. Walter Brewing Co., 129 N.W. 645, 646 (Wis. 1911); cf. Trapkus v. Edstrom's, Inc., 489 N.E.2d 340, 344 (Ill. App. Ct. 1986); Tracey v. Sconnix Broad. of S.C., Inc., 325 S.E.2d 542, 544 (S.C. 1985); Board of Dirs. of Kennewick Sch. Dist. v. Lamanna, 287 P.2d 105, 107-08 (Wash. 1955); Breen v. Central Iowa Power & Light Co., 224 N.W. 562, 564 (Iowa 1929); Cooper v. Stronge & Warner Co., 126 N.W. 541, 541 (Minn. 1910).  The record contains support for Douglas's allegation that he was demoted to a position with both a lower pay and lower status; the position Orkin offered purportedly demoted him from the highest to the lowest position available in the Rock Springs area and reduced his compensation by more than half—from $2,500 to $1,100.

In addition to establishing that a reduction in rank or material change in duties occurred, however, an employee must also show that the new rank or duties which she was asked to assume were neither encompassed by, nor included

within the contemplation of, the employment contract. See, e.g., Miller, 400 N.E.2d at 1310-11 ("If an employee, especially an executive employee, is engaged to fill a particular position, any material reduction in rank constitutes a breach of the employment agreement and is tantamount to a discharge, unless the employment contract, by its terms, contemplates a change in the rank and nature of the job."); Rudman v. Cowles Communications, Inc., 280 N.E.2d 867, 872 (N.Y. 1972) ("If an employee, a fortiori an executive employee, is engaged to fill a particular position, any material change in his duties, or significant reduction in rank, may constitute a breach of his employment agreement.") (citations omitted); Hayes v. Resource Control, Inc., 365 A.2d 399, 400-01 (Conn. 1976) (holding that a reduction in rank or a change in the duties of an employee engaged to fill a particular position constitutes a breach). Therefore, we must determine the magnitude of change in title and compensation contemplated by the employment contract.

In doing so, we consider the contract as a whole, reading each part in the context of the entire document. See Amoco Prod. v. Stauffer Chem. Co. of Wyo., 612 P.2d 463, 465 (Wyo. 1980). "In other words, we analyze the 'tenor' of the contract." Fremont Homes, Inc. v. Elmer, 974 P.2d 952, 956 (Wyo. 1999) (quoting Examination Management Servs., Inc., 927 P.2d at 690). It is undisputed that Orkin hired Douglas for the position of Manager for the Rock

Springs location with a monthly salary of $2,500 and a salary performance review after one year. Although Orkin could change his title and/or compensation pursuant to clause 1(e), it could not terminate him without cause, as stated in clause 5(c)(ii). We "'strive to avoid a construction which renders a provision meaningless'" and "'to reconcile by reasonable interpretation any provisions which apparently conflict before adopting a construction which would nullify any provision.'" Simek, 977 P.2d at 690 (quoting Examination Management Servs., Inc., 927 P.2d at 690).

To construe the parties' contract to allow Orkin to substantially alter Douglas's position or compensation from that set forth in clause 1 at any time after the first year with or without cause would permit an employer to diminish substantially the value of for-cause termination clauses. Such an interpretation would render clauses 1 and 5(c)(ii) meaningless; the for-cause termination clause effectively would be nullified, as would the clause allowing for a salary review of Douglas's performance in his management position, because Orkin could transfer him out of management and force him into resignation at any time after one year by unacceptably reducing his compensation and/or demoting him. Cf. Guiliano v. Cleo, Inc., 995 S.W.2d 88, 94-96 (Tenn. 1999) (holding that an employer breached an employment contract, which encompassed a clause allowing for change in duties and a for-cause termination clause, when it removed the

employee's title and work responsibilities even though it maintained the same level of compensation). Such a result would be absurd.

The extent to which the parties to the contract intended to empower Orkin to change Douglas's employment pursuant to clause 1(e) is uncertain from the four corners of the contract, and thus extrinsic evidence should be considered by the fact-finder. See Sowerwine, 2000 WL 211571, at *2 (citing Wolter, 979 P.2d at 951). We therefore reverse the district court's dismissal of Douglas's breach of contract claim and remand for further proceedings to determine the parties intent upon consideration of such evidence.

**B**

Under Wyoming law, a covenant of good faith and fair dealing is implied in all employment contracts and a breach of that covenant can give rise to tort liability. See Wilder v. Cody Country Chamber of Commerce, 868 P.2d 211, 220-21 (Wyo. 1994). The law governing this tort, however, is not well-developed. Since the Wyoming Supreme Court's application of this tort to employment contracts in Wilder, 868 P.2d 220-21, it has concluded only once, in Jewell, 953 P.2d at 139, that an employee presented sufficient evidence of this tort to preclude summary judgment. See Dubrowski v. Wyoming, – P.2d – , No. 98-212, 2000 WL 295109, at *2 (Wyo. March 23, 2000). Accordingly, Wyoming decisions have "repeatedly stressed that only in rare and exceptional cases is a

-13-

duty created which gives rise to tort liability." Anderson v. South Lincoln Special Cemetery Dist., 972 P.2d 136, 140 (Wyo. 1999) (citations omitted).

To establish a breach of the covenant of good faith and fair dealing, an employee must first establish "a special relationship of trust and reliance," which may be shown by "the existence of separate consideration, common law [or] statutory rights, or rights accruing with longevity of service." Id. (citations omitted). To support his claim of a "special relationship of trust and reliance," Douglas relies on the alleged "existence of separate consideration." Wilder, 868 P.2d at 220-21. The analysis for separate consideration to support a special relationship is "the same as that used to determine whether there exists additional consideration necessary to support an express contract." Worley, 2000 WL 295110, at *8.

Douglas asserts he offered a discounted sale price for his business as consideration in exchange for Orkin's promise of long term employment. Consideration is defined as "a legal detriment [that] has been bargained for and exchanged for a promise." Loghry v. Univcover Corp., 927 P.2d 706, 712 (Wyo. 1996) (citing Moorcroft State Bank v. Morel, 701 P.2d 1159, 1161-62 (Wyo. 1985)). There is no evidence, however, that Orkin bargained for such a discount as separate consideration for a promise of long-term employment. The contracts specify both the sale price for the business and the terms of Douglas's

-14-

employment with Orkin—but we find nothing that requires Orkin to employ Douglas until retirement in exchange for a specified reduction in the sale price. Douglas also argues that the non-competition agreement was bargained for as separate consideration for his long-term employment. Again, nothing is noted in the agreement itself to support this contention of discrete consideration; the contract states that the Douglases were paid for their promise not to compete. This being the situation, dismissal of Douglas's breach of the covenant of good faith and fair dealing claim was appropriate.

## C

"In order to recover for intentional infliction of emotional distress, a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the defendant intentionally or recklessly caused the plaintiff to suffer severe emotional harm." Terry, 947 P.2d at 278 (citation omitted). In breach of employment contract cases, "[i]f an employee's mental distress is caused solely by his discharge, and if the discharge was permitted in his contract, . . . the employer has a complete defense, even if the employer is aware that the discharge will cause emotional distress." Id. (citation omitted). The basis of the district court's ruling that Orkin had a complete defense to Douglas's intentional infliction of emotional distress claim was that the employment contract provided for termination. Because we reverse the district court's dismissal of Douglas's

breach of contract claim, we likewise reverse its dismissal of his intentional infliction of emotional distress claim for further consideration following the court's resolution of the breach of employment contract issue.

### III

We **AFFIRM** the district court's dismissal of Douglas's breach of the covenant of good faith and fair dealing claim. We **REVERSE** the district court's dismissal of Douglas's breach of contract and intentional infliction of emotional distress claims and **REMAND** for further proceedings in accordance with this opinion.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge